WELLS, Justice,
concurring.
I concur with the adoption in part and rejection in part of the Committee’s recommendations in respect to these rules.
I write to point out that I concur with the rejection of the recommendation in respect to rule 2.050 concerning rotation plans because I believe that under the present rule and practice, the rotation assignments of judges is within the discretion of chief judges. In my view, this is the system which works best.
I am concerned, however, that the rejection of the proposed amendment may be interpreted as an endorsement of a mandatory rotation plan. I want it to be clearly understood that I do not interpret the rule to require a mandatory rotation plan. I do not favor a mandatory rotation which requires judges to rotate every two years or at another fixed expiration period on the basis of a state-wide rule imposed by this Court. I believe the issues involved in rotation are better administered in the circuits, where the circuit leadership is in a position to assess capabilities, expertise, and case-load requirements.
I do believe each circuit should have a plan for assignments that endeavors to accomplish the goal of the rule, which is to make each judge in the circuit able to carry out effectively all the responsibilities of a judge when assigned a particular judicial duty. I also .recognize the reality that some assignments are more coveted than others and that hard choices have to be made in assignments, which can give rise to personal bad feelings. I believe it is the responsibility of all judges to be willing to take less desirable assignments for some period of time regardless of seniority.
However, I do not believe that the public is well served by a rotation system which ignores the reality that the law in some areas is exceedingly and increasingly complex and that some judges have developed more expertise and experience in those areas.
KOGAN, C.J., and GRIMES, J., concur.

APPENDIX

RULE 2.030. THE SUPREME COURT
(a) Internal Government.
(1) Exercise of Powers and Jurisdiction. The supreme court shall exercise its powers and jurisdiction en banc. Five justices shall constitute a quorum and the concurrence of 4 shall be necessary to a decision. In cases requiring only a panel of 5, if 4 of the 5 justices who consider the case do not concur, it shall be submitted to the other 2 justices.
(2) Chief Justice.
(A) The chief justice shall be chosen by majority vote of the justices for a term commencing on July 1 of even-numbered years. If a vacancy occurs, a successor shall be chosen promptly to serve the balance of the unexpired term.
(B) The chief justice shall have the following administrative powers and duties. The chief justice shall:
(i) be the administrative officer of the court and shall be responsible for the dispatch of its business;
(ü) have the power to act on requests for stays during the pendency of proceedings, to order the consolidation of cases, to determine all procedural motions and petitions relating to the time for filing and size of briefs and other papers provided for under the rules of this court, to advance or *93 continue cases, and to rule on other procedural matters relating to any proceeding or process in the court;
(in) have the power to assign active or retired county, circuit, or appellate judges or justices to judicial service in this state, in accordance with subdivisions (a)(3) and (a)(4) of this rule; and
(iv) have the power, upon request of the chief judge of any circuit or district, or sua sponte, in the event of natural disaster, civil disobedience, or other emergency situation requiring the closure of courts or other circumstances inhibiting the ability of litigants to comply with deadlines imposed by rules of procedure applicable in the courts of this state, to enter such order or orders as may be appropriate to suspend, toll, or otherwise grant relief from time deadlines imposed by otherwise applicable statutes and rules of procedure for such period as may be appropriate, including, without limitation, those affecting speedy trial procedures in criminal and juvenile proceedings, all civil process and proceedings, and all appellate time limitations; and
(v) perform such other administrative duties as may be required and which are not otherwise provided for by law or rule.
(C) The chief justice shall be notified by all justices of any contemplated absences from the court and the reasons therefor.
(D) If the chief justice dies, retires, or is unable to perform the duties of the office, the justice longest in continuous service shall perform the duties during the period of incapacity or until a successor chief justice is elected.
(3) Administration.
(A)The chief justice may, either upon request or when otherwise necessary for the prompt dispatch of business in the courts of this state, temporarily assign justices of the supreme court, judges of district courts of appeal, circuit judges, and judges of county courts to any court for which they are qualified to serve. Any consenting retired justice or judge may be assigned to judicial service and receive compensation as provided by law.
(B) For the purpose of judicial administration, a “retired judge” is defined as a judge not engaged in the practice of law who has been a judicial officer of this state. A retired judge shall comply with all requirements that the supreme court deems necessary relating to the recall of retired judges.
(C) When a judge who is eligible to draw retirement compensation has entered the private practice of law, the judge may be eligible for recall to judicial service upon cessation of the private practice of law and approval of the judge’s application to the court. The application shall state the period of time the judge has not engaged in the practice of law, and must be approved by the court before the judge shall be eligible for recall to judicial service.
(D) A retired judge serving on assignment to temporary judicial duty may be referred to as a “senior judge.” This designation is honorary and has no effect on the responsibilities or conduct of the retired judge.
(4) Assignments of Justices and Judges.
(A) When a justice of the supreme court is unable to perform the duties of office, or when necessary for the prompt dispatch of the business of the court, the chief justice may assign to the court any judge who is qualified to serve, for such time as the chief justice may direct.
(B) When a judge of any district court of appeal is unable to perform the duties of office, or when necessary for the prompt dispatch of the business of the court, the chief judge shall advise the chief justice and the chief justice may assign to the court any judge who is qualified to serve, for such time or such proceedings as the chief justice may direct.
(C) When any circuit or county judge is unable to perform the duties of office, or when necessary for the prompt dispatch of the business of the court, the chief judge of the circuit may assign any judge in the circuit to temporary service for which the judge is qualified, in accordance with rule 2.050. If the chief judge deems it necessary, the chief judge may request the chief justice to assign a judge to the court for such time or such proceedings as the chief justice may direct.
*94 (b)Clerk.
(1) Appointment. The supreme court shall appoint a clerk who shall hold office at the pleasure of the court and perform such duties as the court directs. The clerk’s compensation shall be fixed by law. The clerk’s office shall be in the supreme court building. The clerk shall devote full time to the duties of the office and shall not engage in the practice of law while in office.
(2) Custody of Records, Files, and Seal. All papers, records, files, and the seal of the court shall be kept in the office and the custody of the clerk. The clerk shall not allow any paper, record, or file to be taken from the clerk’s office or the courtroom, except by a justice of the court or upon the order of the court.
(8) Records of Proceedings. The clerk shall keep such records as the court may from time to time order or direct. The clerk shall keep a docket or equivalent electronic record of all cases that are brought for review to, or that originate in, the court. Each case shall be numbered in the order that the notice, petition, or other initial pleading originating the cause is filed in the court.
(4) Filing Fee. In all cases filed in the court, the clerk shall require the payment of a fee as provided by law when the notice, petition, or other initial pleading is filed. The payment shall not be exacted in advance in appeals in which a party has been adjudicated insolvent for the purpose of an appeal or in appeals in which the state is the real party in interest as the moving party. The payment of the fee shall not be required in habeas corpus proceedings, or appeals therefrom, arising out of or in connection with criminal actions.
(5) Issuance of Mandate; Recordation and Notification. The clerk shall issue such mandates or process as may be directed by the court. Upon the issuance of any mandate, the clerk shall record the issuance in a book or equivalent electronic record kept for that purpose, in which the date of issuance and the manner of transmittal of the process shall be noted. In proceedings in which no mandate is issued, upon final adjudication of the pending cause the clerk shall transmit to the party affected thereby a copy of the court’s order or judgment. The clerk shall notify the attorneys of record of the issuance of any mandate or the rendition of any final judgment. The clerk shall furnish without charge to all attorneys of record in any cause a copy of any order or written opinion rendered in such action.
(6)Return of Original Papers. Upon the conclusion of any proceeding in the supreme court, the clerk shall return to the clerk of the lower court the original papers or files transmitted to the court for use in the cause.
(c) Librarian.
(1) Appointment. The supreme court shall appoint a librarian of the supreme court and such assistants as may be necessary. The supreme court library shall be in the custody of the librarian, but under the exclusive control of the court. The library shall be open to members of the bar of the supreme court, to members of the legislature, to law officers of the executive or other departments of the state, and to such other persons as may be allowed to use the library by special permission of the court.
(2) Library Hours. The library shall be open during such times as the reasonable needs of the bar require and shall be governed by regulations made by the librarian with the approval of the court.
(3) Books. Books shall not be removed from the library except for use by, or upon order of, any justice.
(d) Marshal.
(1) Appointment. The supreme court shall appoint a marshal who shall hold office at the pleasure of the court and perform such duties as the court directs. The marshal’s compensation shall be fixed by law.
(2) Duties. The marshal shall have power to execute process of the court throughout the state and such other powers as may be conferred by law. The marshal may deputize the sheriff or a deputy sheriff in any county to execute process of the court and shall perform such clerical or ministerial duties as the court may direct or as required by law. Subject to the direction of the court, *95 the marshal shall be custodian of the supreme court building and grounds.
(e) State Courts Administrator.
(1) Appointment. The supreme court shall appoint a state courts administrator who shall serve at the pleasure of the court and perform such duties as the court directs. The state courts administrator’s compensation shall be fixed by law.
(2) Duties. The state courts administrator shall supervise the administrative office of the Florida courts, which shall be maintained at such place as directed by the supreme court; shall employ such other personnel as the court deems necessary to aid in the administration of the state courts system; shall represent the state courts system before the legislature and other bodies with respect to matters affecting the state courts system and functions related to and serving the system; shall supervise the preparation and submission to the supreme court, for review and approval, of a tentative budget request for the state courts system and shall appear before the legislature in accordance with the court’s directions in support of the final budget request on behalf of the system; shall assist in the preparation of educational and training materials for the state courts system and related personnel, and shall coordinate or assist in the conduct of educational and training sessions for such personnel; shall assist all courts in the development of improvements in the system, and submit to the chief justice and the court appropriate recommendations to improve the state courts system; and shall collect and compile uniform financial and other statistical data or information reflective of the cost, workloads, business, and other functions related to the state courts system.
(f) Open Sessions. All sessions of the court shall be open to the public, except proceedings designated as confidential by the court and conference sessions held for the discussion and consideration of pending cases, for the formulation of opinions by the court, and for the discussion or resolution of other matters related to the administration of the state courts system.
(g)Designation of Assigned Judges. When any judge of another court is assigned for temporary service on the supreme court, that judge shall be designated, as author or participant, by name and initials followed by the words “Associate Justice.”
RULE 2.050. TRIAL COURT ADMINISTRATION
(a) Purpose. The purpose of this rule is to fix administrative responsibility in the chief judges of the circuit courts and the other judges that the chief judges may designate. When these rules refer to the court, they shall be construed to apply to a judge of the court when the context requires or permits.
(b) Chief Judge.
(1) The chief judge shall be a circuit judge who possesses administrative ability.
(2) The chief judge shall exercise administrative supervision over all courts within the judicial circuit in the exercise of judicial powers and over the judges and officers of the courts. The chief judge shall be responsible to the chief justice of the supreme court. The chief judge may enter and sign administrative orders, except as otherwise provided by this rule.
(3) The chief judge shall be the chief judicial officer of the circuit, shall maintain liaison in all judicial administrative matters with the chief justice of the supreme court, and shall develop an administrative plan for the efficient and proper administration of all courts within that circuit. The plan shall include an administrative organization capable of effecting the prompt disposition of eases; assignment of judges, other court officers, and executive assistants; control of dockets; regulation and use of courtrooms; and mandatory periodic review of the status of the inmates of the county jail. The plan shall be compatible with the development of the capabilities of the judges in such a manner that each judge will be qualified to serve in any division, thereby creating a judicial pool from which judges may be assigned to various courts throughout the state. The administrative plan shall include a consideration of the statistical data developed by the case reporting system. Questions concern *96 ing the administration or management of the courts of the circuit shall be directed to the chief justice of the supreme court through the state courts administrator.
(4) The chief judge shall assign judges to the courts and divisions, and shall determine the length of each assignment. All judges shall inform the chief judge of any contemplated absences that will affect the progress of the court’s business. If a judge is temporarily absent, is disqualified in an action, or is unable to perform the duties of the office, the chief judge or the chief judge’s designee may assign a proceeding pending before the judge to any other judge or any additional assigned judge of the same court. The chief judge may assign any judge to temporary service for which the judge is qualified in any court in the same circuit. If it appears to the chief judge that the speedy, efficient, and proper administration of justice so requires, the chief judge shall request the chief justice of the supreme court to assign temporarily an additional judge or judges from outside the circuit to duty in the court requiring assistance, and shall advise the chief justice whether or not the approval of the chief judge of the circuit from which the assignment is to be made has been obtained. The assigned judges shall be subject to administrative supervision of the chief judge for all purposes of this rule. When assigning a judge to hear any type of posteonvietion or collateral relief proceeding brought by a defendant who has been sentenced to death, the chief judge shall assign to such cases the judge who presided over the original proceeding if that judge is active or otherwise available to serve unless otherwise directed by the supreme court. Nothing in this rule shall restrict the constitutional powers of the chief justice of the supreme court to make such assignments as the chief justice shall deem appropriate.
(5) The chief judge may designate a judge in any court or court division of circuit or county courts as “administrative judge” of any court or division to assist with the administrative supervision of the court or division. The designee shall be responsible to the chief judge, shall have the power and duty to carry out the responsibilities assigned by the chief judge, and shall serve at the pleasure of the chief judge.
(6) The chief judge may require the attendance of prosecutors, public defenders, clerks, bailiffs, and other officers of the courts, and may require from the clerks of the courts, sheriffs, or other officers of the courts periodic reports that the chief judge deems necessary.
(7) The chief judge shall regulate the use of courtrooms, regularly examine the dockets of the courts under the chief judge’s administrative supervision, and require a report on the status of the actions on the dockets. The chief judge may take such action as may be necessary to cause the dockets to be made current. The chief judge shall monitor the status of all pending postconviction or collateral relief proceedings brought by defendants who have been sentenced to death and shall take the necessary actions to assure that such cases proceed without undue delay. On July 1 and October 1, 1996, and on the first day of every January, April, July, and October thereafter, the chief judge shall inform the chief justice of the supreme court of the status of all such pending eases.
(8) The chief judge or the chief judge’s designee shall regularly examine the status of every inmate of the county jail.
(9) The chief judge may authorize the clerks of courts to maintain branch county court facilities. When so authorized, clerks of court shall be permitted to retain in such branch court facilities all county court permanent records of pending cases, and may retain and destroy these records in the manner provided by law.
(c) Selection. The chief judge shall be chosen by a majority of the circuit and county court judges within the circuit for a term of 2 years commencing on July 1 of each odd-numbered year, or if there is no majority, by the chief justice, for a term of 2 years. The election for chief judge shall be held no sooner than February 1 of the year during which the chief judge’s term commences beginning July 1. All elections for chief judge shall be by secret ballot. Any circuit or county court judge may nominate a candidate for chief *97 judge and proxy voting shall be permitted. A chief judge may be removed as chief judge by the supreme court, acting as the administrative supervisory body of all courts, or may be removed by a two-thirds vote of the active judges. The purpose of this rule is to fix a 2-year cycle for the selection of the chief judge in each circuit. A chief judge may serve for successive terms. The selection of the chief judge should be based on managerial, administrative, and leadership abilities. A chief judge who is to be temporarily absent shall select an acting chief judge from among the circuit judges. If a chief judge dies, retires, fails to appoint an acting chief judge during an absence, or is unable to perform the duties of the office, the chief justice of the supreme court shall appoint a circuit judge to act as chief judge during the absence or disability, or until a successor chief judge is elected to serve the unexpired term. When the office of chief judge is temporarily vacant pending action within the scope of this paragraph, the duties of court administration shall be performed by the circuit judge having the longest continuous service as a judge or by another circuit judge designated by that judge.
(d) Circuit Court Administrator. Each circuit court administrator shall be selected or terminated by the chief judge subject to concurrence by a majority vote of the circuit and county judges of the respective circuits.
(e) Local Rules and Administrative Orders.
(1) Local court rules as defined in rule 2.020 may be proposed by a majority of the circuit and county judges in the circuit. The judges shall notify the local bar within the circuit of the proposal, after which they shall permit a representative of the local bar, and may permit any other interested person, to be heard orally or in writing on the proposal before submitting it to the supreme court for approval. When a proposed local rule is submitted to the supreme court for approval, the following procedure shall apply:
(A)Local court rule proposals shall be submitted to the supreme court in January of each year. The supreme court may accept emergency proposals submitted at other times.
(B) Not later than February 15 of each year, the clerk of the supreme court shall submit all local court rule proposals to the Supreme Court Local Rules Advisory Committee created by rule 2.130. At the same time, the clerk of the supreme court shall send copies of the proposed rules to the appropriate committees of The Florida Bar. The Florida Bar committees, any interested local bar associations, and any other interested person shall submit any comments or responses that they wish to make to the Supreme Court Local Rules Advisory Committee on or before March 15 of the year.
(C) The Supreme Court Local Rules Advisory Committee shall meet on or before April 15 to consider the proposals and any comments submitted by interested parties. The committee shall transmit its recommendations to the supreme court concerning each proposal, with the reasons for its recommendations, within 15 days after its meeting.
(D) The supreme court shall consider the recommendations of the committee and may resubmit the proposals with modifications to the committee for editorial comment only. The supreme court may set a hearing on any proposals, or consider them on the recommendations and comments as submitted. If a hearing is set, notice shall be given to the chief judge of the circuit from which the proposals originated, the executive director of The Florida Bar, the chair of the Rules of Judicial Administration Committee of The Florida Bar, any local bar associations, and any interested persons who made comments on the specific proposals to be considered. The supreme court shall act on the proposals promptly after the recommendations are received or heard.
(E) If a local court rule is approved by the supreme court, it shall become effective on the date set by that court.
(F) A copy of all local court rules approved by the supreme court shall be indexed and recorded by the clerk of the circuit court in each county of the circuit *98 where the rules are effective. A set of the recorded copies shall be readily available for inspection as a public record, and copies shall be provided to any requesting party for the cost of duplication. The chief judge of the circuit may provide for the publication of the rules. The clerk of the supreme court shall furnish copies of each approved local court rule to the executive director of The Florida Bar, and upon r-equest-to-any-law-book-publisher.
(2) Any judge or member of The Florida Bar who believes that an administrative order promulgated under subdivision (b)(2) of this rule is a court rule or a local rule as defined in rule 2.020, rather than an administrative order, may apply to the Supreme Court Local Rules Advisory Committee for a decision on the question. The decisions of the committee concerning the determination of the question shall be reported to the supreme court, and the court shall follow the procedure set forth in subdivision (D) above in considering the recommendation of the committee.
(3) All administrative orders of a general and continuing nature, and all others designated by the chief judge, shall be indexed and recorded by the clerk of the circuit court in each county where the orders are effective. A set of the recorded copies shall be readily available for inspection as a public record, and copies shall be provided to any requesting party for the cost of duplication. The clerk of the circuit court shall furnish copies of each administrative order to the executive director of The Florida Bar. The chief judge shall, on an annual basis, direct a review of all local administrative orders to ensure that the set of copies maintained by the clerk remains current and does not conflict with supreme court or local rules.
(4) All local court rules entered pursuant to this section shall be numbered sequentially for each respective judicial circuit.
(f)Duty to Rule within a Reasonable Time. Every judge has a duty to rule upon and announce an order or judgment on every matter submitted to that judge within a reasonable time. Each judge shall maintain a log of cases under advisement and inform the chief judge of the circuit at the end of each calendar month of each case that has been held under advisement for more than 60 days.
(g) Neglect of Duty. The failure of any judge, clerk, prosecutor, public defender, attorney, court reporter, or other officer of the court to comply with an order or directive of the chief judge shall be considered neglect of duty and shall be reported to the chief justice of the supreme court. The chief justice may report the neglect of duty by a judge to the Judicial Qualifications Commission, and neglect of duty by other officials to the governor of Florida or other appropriate person or body.
(h) Status Conference Aafter Compilation of Record in Death Cases. In any proceeding in which a defendant has been sentenced to death, the circuit judge assigned to the case shall take such action as may be necessary to assareensure that a complete record on appeal has been properly prepared. To that end, the judge shall convene a status conference with all counsel of record as soon as possible after the record has been prepared pursuant to rule of appellate procedure 9.200(d) but before the record has been transmitted. The purpose of the status conference shall be to ensure that the record is complete.
Court Commentary
1996 Court Commentary. Rule 2.050(h) should be read in conjunction with Florida Rule of Appellate Procedure 9.140(b)(4)(A).
RULE 2.052. CALENDAR CONFLICTS
(a) Priorities. In resolving calendar conflicts between the state courts of Florida or between a state court and a federal court in Florida, the following case priorities must be considered:
(1) Criminal cases should prevail over civil cases.
(2) Jury trials should prevail over non-jury trials.
(3) Appellate arguments, hearings, and conferences should prevail over trial court proceedings.
*99 (4) The case in which the trial date has been first set should take precedence.
(b) Additional Circumstances. Factors such as cost, numbers of witnesses and attorneys involved, travel, length of trial, age of case, and other relevant matters may warrant deviation from these case priorities.
(c) Notice and Agreement; Resolution by Judges. When an attorney is scheduled to appear in 2 courts at the same time and cannot arrange for other counsel to represent the clients’ interests, the attorney shall give prompt written notice of the conflict to opposing counsel, the clerk of each court, and the presiding .judge of each case, if known. If the presiding judge of the case cannot be identified, written notice of the conflict shall be given to the chief judge of the court having jurisdiction over the case, or to the chief judge’s designee. The judges or their designees shall confer and undertake to avoid the conflict by agreement among themselves. Absent agreement, conflicts should be promptly resolved by the judges or their designees in accordance with the above case priorities.
Committee Notes
1996 Adoption. The adoption of this rule was prompted by the Resolution of the Florida State-Federal Judicial Council Regarding Calendar Conflicts Between State and Federal Courts, which states as follows:
WHEREAS, the great volume of cases filed in the state and federal courts of Florida creates calendar conflicts between the state and federal courts of Florida which should be resolved in a fair, efficient and orderly manner to allow for judicial efficiency and economy; and
WHEREAS, the Florida State-Federal Judicial Council which represents the Bench and Bar of the State of Florida believes that it would be beneficial to formally agree upon and publish recommended procedures and priorities for resolving calendar conflicts between the state and federal courts of Florida;
NOW, THEREFORE, BE IT RESOLVED
In resolving calendar conflicts between the state and federal courts of Florida, the following case priorities should be considered:
1. Criminal cases should prevail over civil cases.
2. Jury trials should prevail over non-jury trials.
3. Appellate arguments, hearings, and conferences should prevail over trials.
4. The case in which the trial date has been first set should take precedence.
5. Circumstances such as cost, numbers of witnesses and attorneys involved, travel, length of trial, age of case and other relevant matters may warrant deviation from this policy. Such matters are encouraged to be resolved through communication between the courts involved.
Where an attorney is scheduled to appear in two courts — trial or appellate, state or federal — at the same time and cannot arrange for other counsel in his or her firm or in the case to represent his or her client’s interest, the attorney shall give prompt written notice to opposing counsel, the clerk of each court, and the presiding judge of each case, if known, of the conflict. If the presiding judge of a case cannot be identified, written notice of the conflict shall be given to the chief judge of the court having jurisdiction over the case, or to his or her designee. The judges or their designees shall confer and undertake to avoid the conflict by agreement among themselves. Absent agreement, conflicts should be promptly resolved by the judges or their designees in accordance with the above case priorities.
In jurisdictions where calendar conflicts arise with frequency, it is recommended that each court involved consider appointing a calendar conflict coordinator to assist the judges in resolving calendar conflicts by obtaining information regarding the conflicts and performing such other ministerial duties as directed by the judges.
REVISED AND READOPTED at Miami, Florida, this 13th day of January, 1995.
*100 RULE 2.055. PAPER
(a) All pleadings, motions, petitions, briefs, notices, orders, judgments, decrees, opinions, and other papers and official documents filed in any court shall be filed on recycled paper measuring 8½ by 11 inches. For purposes of this rule, paper is recycled if it contains a minimum content of 50 percent waste paper. Xerographic reduction of legal-size (8½ by 14 inches) documents to letter size (8¾ by 11 inches) is prohibited.
(b) Any exhibit or attachment filed with pleadings or papers may be filed in its original size.
(c) A-1½ inch square (1½ by 1 ½ inches) in the upper right-hand corner of all papers filed shall be left blankOn all papers to be filed with the clerk of the court and subsequently recorded in the public records of any county, including but not limited to final money judgments and notices of lis pendens, a 3-inch by 3-inch space at the top right-hand corner on the first page and a 1-inch by 3-inch space at the top right-hand corner on each subsequent page shall be left blank and reserved for use by the clerk of court.
(d) No clerk of court shall refuse for filing any document or paper because of noncompliance with this rule. However, upon request of the clerk of court, noncomplying documents shall be resubmitted in accordance with this rule.
(e) This rule shall-become effective January-1-,-1-993. — There shall be a 1-year-transi-tion period from January 1, 1993, to January -1,-1994,-during which time documents will be accepted for filing on- either reeyc-led-or-non-recycled- paper. — Effective January- 1, 1994, all-filings in any court must be-in compliance with-the recycled paper-requirements of this rule, — The requirements of-this -rule regarding the size of paper shall not be altered-or affected by the transition period.
Court Commentary
1989 Adoption. Rule 2.055 is new. This rule aligns Florida’s court system with the federal court system and the court systems of the majority of our sister states by requiring in subdivision (a) that all pleadings, motions, petitions, briefs, notices, orders, judgments, decrees, opinions, or other papers filed with any Florida court be submitted on paper measuring 8½ by 11 inches. Subdivision (e) provides a 1-year transition period from the effective date of January 1, 1990, to January 1, 1991, during which time filings that traditionally have been accepted on legal-size paper will be accepted on either legal- or letter-size paper. The 1-year transition period was provided to allow for the depletion of inventories of legal-size paper and forms. The 1-year transition period was not intended to affect compliance with Florida Rule of Appellate Procedure 9.210(a)(1), which requires that typewritten appellate briefs be filed on paper measuring 8½ by 11 inches. Nor was it intended that the requirement of Florida Rule of Appellate Procedure 9.210(a)(1) that printed briefs measure 6 by 9 inches be affected by the requirements of subdivision (a).
Subdivision (b), which recognizes an exception for exhibits or attachments, is intended to apply to documents such as wills and traffic citations which traditionally have not been generated on letter-size paper.
Subdivision (c) was adopted to ensure that a 1⅜ inch square at the top right-hand corner of all filings is reserved for use by the clerk of court. Subdivision (d) was adopted to ensure that all papers and documents submitted for filing will be considered filed on the date of submission regardless of paper size. Subdivision (d) also ensures that after the 1-year transition period of subdivision (e), filings that are not in compliance with the rule are resubmitted on paper measuring 8½ by 11 inches.
This rule is not intended to apply to those instruments and documents presented to the clerk of the circuit court for recording in the Official Records under section 28.222, Florida Statutes (1987). It is also not intended to apply to matters submitted to the clerk of the circuit court in the capacity as ex officio clerk of the board of county commissioners pursuant to article VIII, section (l)(d), Florida Constitution.
1996 Amendment. Subdivision (c) was amended to make the blank space requirements for use by the clerk of the court consistent with section 695.26, Florida Stat *101 utes (1995). Subdivision (e) was eliminated because the transition period for letter-size and recycled paper was no longer necessary.
RULE 2.065. NOTICES TO PERSONS WITH DISABILITIES
All notices of court proceedings to be held in a public facility, and all process compelling appearance at such proceedings, shall include the following:
“If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact [identify applicable court personnel by name, address, and telephone number] within 2 working days of your receipt of this [describe notice]; if you are hearing or voice impaired, call 1-800-955-8771.”
RULE 2.125. JUDICIAL MANAGEMENT COUNCIL
(a) Creation and Responsibilities. There is hereby created the Judicial Management Council of Florida, which shall be charged with the following responsibilities:
(1)The comprehensive study and formulation of recommendations on issues related to the efficient and effective administration of justice that have statewide impact, affect multiple levels of the court system, or affect multiple constituencies in the court and justice community.
(A)Issues that may be examined by the Judicial Management Council include, but are not limited to:
(i) the organization, jurisdiction, and management of the courts;
(ii) the qualifications, selection process, compensation, disciplinary process, and removal process for judicial officers;
(in) administrative policies and programs of the court system;
(iv)state and local budgets for the courts and related entities, and the balance of funding between state and local government;
(v) available revenues whiehthat are currently or may be used to support the courts, including fines, forfeitures, filing fees, add-ons, surcharges, and liens;
(vi) rules of eourt and rule-makin-grulemaking process;
(vii) legislative issues, including changes in the statutes or the constitution; and
(viii) the policies, procedures, and programs of other entities that are involved in court proceedings, or otherwise affect the work of the courts.
(B) Issues may become part of the Judicial Management Council’s agenda by:
(i) referral from the Gchief Jjustice;
(ii) referral from the Ssupreme Gcourt; or
(iii) identification by the Judicial Management Council on its own initiative based on the recommendations of members; input from judges, the bar, court personnel, or other sources; input from public hearings; referral of issues by the Florida Legislature, either informally or through the passage of legislation; or referral of issues by the ©governor, Gca-binet, or executive branch agencies.
(C) The Gchief Jjustice and the Ssu-preme Gcourt shall consider referring significant new issues or problems with implications for judicial branch organization, policy, or budgeting to the Judicial Management Council, prior to the creation of any new committees.
(2) The development and recommendation of the long-range strategic plan and quality management and accountability program for the judicial branch, which are required pur-, suant to Aarticle III, Ssection 19, of the Florida Constitution.
(3) The development of recommendations to all Constitutional Revision Commissions.
(4) To review and respond to the work of other commissions, task forces, councils, and committees of the judicial, legislative and executive branches, and The Florida Bar, which may consider matters having policy, funding, or operational implications for the judicial branch and the justice system.
*102 (5) To provide a liaison with private sector entities with an interest in the court system, including the Florida Council of 100.
(b) Schedule of Reports.
(1) The Judicial Management Council shall prepare an annual report on its activities, along with recommendations on substantive legislation and budget resources, which shall be presented to the Gchief Jjustice and the Ssupreme Gcourt on October 1 of each year.
(2) The Judicial Management Council shall prepare a biennial review of the judicial branch’s long-range strategic plan and formulate recommendations for a two2-year operational plan based on such review, which shall be presented to the Gchief Jjustice on July 1 of each even-numbered year.
(3) The Judicial Management Council may prepare other reports as it deems necessary, which shall be presented to the Gchief Jjus-tiee or the Ssupreme Gcourt upon completion.
(c) Supreme Court Action on Recommendations by the Judicial Management Council. The Gchief Jjustice or the Ssu-preme Gcourt ol-F-lorida-may take any or all of the following actions on recommendations made by the Judicial Management Council:
(1) To dDirect that action be taken to influence or change administrative policy, management practices, rules, or programs that are the subject of the recommendations.
(2) Te4Include the recommendation in the State Courts System’s legislative agenda or budget requests.
(3) To-rRefer the recommendation back to the Judicial Management Council with an indication that:
(A) Tthe Judicial Management Council shall undertake further study;
(B) Tthe Ssupreme Gcourt takes no position on the issue and encourages the Judicial Management Council to take whatever further action on the matter the Judicial Management Council deems appropriate; or
(C) Tthe Ssupreme Gcourt disapproves of the recommendation and directs either reassessment of the recommendation or no further action by the Judicial Management Council.
(4)To rRefer the recommendation to other entities, such as the Florida Legislature, the Ggovernor, the Gcabinet, executive branch agencies, or The Florida Bar, as the Ssupreme Gcourt deems appropriate.
(d)Membership and Organization. The membership of the Judicial Management Council shall be appointed with the intention of ensuring diversity and representation of groups involved in or affected by the judicial system.
(1) There shall be 21 official members of the Judicial Management Council, to be appointed by the Gchief Jjustice, which shall include:
(A) one Ssupreme Gcourt justice;
(B) two district court of appeal judges, to be nominated by the Florida Conference of District Court of Appeal Judges;
(C) two circuit court judges, one of whom shall be an active chief judge, to be nominated by the Florida Conference of Circuit Judges;
(D) two county court judges, to be nominated by the Conference of County Court Judges;
(E) one state attorney, to be nominated by the Florida Prosecuting Attorneys Association;
(F) one public defender, to be nominated by the Florida Public Defenders Association;
(G) the Aattorney Ggeneral or the Aat-torney Ggeneral’s designee;
(H) one clerk of court, to be nominated by the Florida Association of Court Clerks;
(I) two representatives of The Florida Bar, one of whom shall be a member of the Bboard of Ggovernors, to be nominated by the Bboard of Ggovernors;
(J) one representative of the Ggover-nor’s legal office, to be designated by the Ggovernor;
(K) one member of the Florida Senate and one member of the House of Representatives;
(L) four public members; and
*103 (M) one member of the Florida Council of 100, to be nominated by the Florida Council of 100.
(2) The legislative members shall serve as ad hoc, voting members, whose absence shall not be considered for purposes of determining whether a quorum is present at meetings.
(S)The Cchief ¿justice may appoint no more than eights members at large who shall serve as voting members for a term of threeS years.
(4) The Cchief ¿justice or the Cchief ¿justice’s designee shall serve as Cchair of the ¿udieial Management Council.
(5) To ensure continuity through the ¿udi-eial Management Council’s development of a long range strategic plan for the judicial branch, the original members of the council shall be appointed for a term of three3 years. The members’ terms thereafter shall be on a staggered, multi-year basis, to be designated by future administrative orders of the Cchief ¿justice.
(6) The ¿udieial Management Council shall establish a committee structure and procedures whichthat ensure broad-based involvement of and input from interested constituencies. The ¿udieial Council shall have the authority and resources to improve its inclusiveness through a variety of means, such as:
(A) Establishing committees or subcommittees whichthat include persons who are not members of the Council but whose input may be needed on selected issues;
(B) Rreferring matters to existing groups or committees, such as committees of The Florida Bar, for comment and recommendations;
(C) Gconducting focus groups, workshops, and town hall type meetings;
(D) Gconducting public hearings; and
(E) Gconducting surveys.
(7) The ¿udieial Management Council shall explore and recommend appropriate protocols for information sharing and coordination of work by the various committees that have been created by the court system. Where-When-appropriate, the ¿udieial Management Council shall include such committees in the process of developing the long-range strategic plan.
(e) Staff Support and Funding. The Office of the State Courts Administrator shall provide primary staff support to the ¿udieial Management Council. Adequate staffing and other resources shall be made available to the Office of the State Courts Administrator to ensure the effective and efficient completion of tasks assigned to the ¿udieial Management Council. Sufficient resources shall also be provided for meetings of the ¿udieial Management Council and its committees or subcommittees, and other expenses necessary to the satisfactory completion of its work.
RULE 2.135. PRIORITY OF CONFLICTING APPELLATE RULES
The Florida Rules of Appellate Procedure shall control all proceedings in the supreme court and the district courts, and all proceedings in which the circuit courts exercise their appellate jurisdiction, notwithstanding any conflicting rules of procedure.
RULE 2.180. CHANGE OF VENUE PROCEDURES
(a) Preliminary Procedures. Prior to entering an order to change venue to a particular circuit in a criminal case or in any other case in which change of venue will likely create an unusual burden for the transferee circuit, the chief judge in the circuit in which the case originated shall contact the chief judge in the circuit to which the case is intended to be moved to determine the receiving county’s ability to accommodate the change of venue. It is the intent of this rule that the county identified to receive the case shall do so unless the physical facilities or other resources in that county are such that moving the case to that county would either create an unsafe situation or adversely affect the operations of that court. Any conflict between the circuits regarding a potential change of venue shall be referred to the chief justice of the Florida Supreme Court for resolution.
(b) Presiding Judge. The presiding judge from the originating court shall accompany the change of venue case, unless the *104 originating and receiving courts agree otherwise.
(c)Reimbursement of Costs. As a general policy the county in which an action originated shall reimburse the county receiving the change of venue case for any ordinary expenditure and any extraordinary but reasonable and necessary expenditure that would not otherwise have been incurred by the receiving county. For purposes of this section, ordinary expenditure, extraordinary expenditure, and nonreimbursable expenditure are defined as follows:
(1) Ordinary expenditures include:
(A) juror expenses not reimbursed by the State of Florida;
(B) court reporter expenses, including appearances by either official or freelance reporters, transcripts, and other expenses associated with the creation of a court record;
(C) court interpreters;
(D) maintenance of evidence, including the cost of handling, storing, or maintaining the evidence beyond the expenses normally incurred by the receiving county;
(E) services and supplies purchased as a result of the change of venue;
(F) overtime expenditures for regular court and clerk staff attributable to the change of venue; and
(G) trial-related expenses, including conflict attorney fees; all expert, law enforcement, or ordinary witness costs and expenses; and investigator expenses.
(2) Extraordinary but reasonable and necessary expenses include:
(A) security-related expenditures, including overtime for security personnel;
(B) facility remodeling or renovation; and
(C) leasing or renting of space or equipment.
Except in emergencies or unless it is impracticable to do so, a receiving county should give notice to the chief judge and clerk of the county in which the action originated before incurring any extraordinary expenditures.
(3)Nonreimbursable expenses include:
(A) normal operating expenses, including the overhead of the receiving county; and
(B) equipment that is purchased and kept by the receiving county that can be used for other purposes or cases.
(d) Documentation of Costs. No expenses shall be submitted for reimbursement without supporting documentation, such as a claim, invoice, bill, statement, or time sheet. Any required court order or approval of costs shall also be sent to the originating court.
(e) Timing of Reimbursement. Unless both counties agree to other terms, reimbursement of all expenses by the originating county shall be paid or disputed in writing on or before the sixtieth day after the receipt of the claim for reimbursement. Payment of a disputed amount shall be made on or before the sixtieth day after the resolution of this dispute. Any amount subject to dispute shall be expeditiously resolved by authorized representatives of the court administrator’s office of the originating and receiving counties.
(f) Media Relations. Procedures to accommodate the media shall be developed by the receiving county immediately upon notice of the change of venue when the change of venue is reasonably expected to generate an unusual amount of publicity. These procedures must be approved by the chief judge of the receiving circuit and implemented pursuant to administrative order by the presiding judge. The presiding judge shall obtain the concurrence of the chief judge before entering any orders that vary from or conflict with existing administrative orders of the receiving circuit.
(g) Case File. The clerk of the circuit court in the originating county shall forward the original case file to the clerk in the receiving county. The receiving clerk shall maintain the file and keep it secure until the trial has been concluded. During the trial, any documents or exhibits that have been added shall be properly marked and added to the file in a manner consistent with the policy and procedures of the receiving county. Af *105 ter the conclusion of the trial, the file shall be returned to the clerk in the county of origin.